<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| BAKER, | |
|     plaintiff, | |
| | Civ. No. 03-2600 |
| v. | |
| | **OPINION** |
| ALLEN, et al., | |
|     defendants. | |

<u>**CHESLER, District Judge**</u>

    This matter comes before the Court on the defendants' motion for reconsideration of this Court's Opinion and Order of April 24, 2005. This case involves claims by plaintiff, Timothy Baker, who is an inmate at South Woods State Prison ("SWSP") in New Jersey, against SWSP prison administrators, corrections officers, a third-party medical services provider, its employees, and another inmate under 42 U.S.C. § 1983 and various state law theories. Plaintiff claims damages against these defendants for failure to protect him from a May 1, 2002 assault by another inmate and failure to provide medical attention for injuries sustained during the assault. Summary judgment motions were previously filed by three separate groups of defendants: the "CMS Defendants"[1], the "DOC Defendants"[2], and defendant Sergeant Lewis Dutton. The Court granted these motions in part and

---

[1] The CMS Defendants include Daniel Schroeder, Kimberly Jenkins, Rita Manigault and Jack Nugent.

[2] The DOC Defendants include Susan Maurer and Stanley Nunn.

1

denied them in part, dismissing plaintiff's claims against the DOC Defendants in their entirety. Only the CMS Defendants argued that plaintiff's claims should be dismissed for failure to exhausted administrative remedies pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). The Court rejected the administrative remedies argument because the parties had not adequately articulated the relevant administrative process the plaintiff was required to meet.

Plaintiff continues to assert claims against defendants Allen, Dutton, Schroeder, Jenkins, and Manigault for violating his rights under the Eighth and Fourteenth Amendments to the United States Constitution and seeks recovery under 42 U.S.C. §§ 1983 and 1988; (Complt. at ¶¶ 30-35, Count One); against Dutton for deliberate indifference to his rights under the New Jersey State and United States constitutions (Id. at ¶¶ 49-58, Count Three); against defendant Samad for injuries he sustained during the March 1, 2002 assault (id. at ¶¶ 59-61, Count Four); against defendant Allen for negligence (id. at ¶¶ 62-70, Count Five); against defendant Dutton for failing to take reasonable measures to insure his safety in violation of the Eighth and Fourteenth Amendments (id. at ¶¶ 79-82, Count Eight); and against the CMS Defendants, Allen, and Samad for assault and battery, intentional infliction of emotional distress, negligence, and violation of the New Jersey State Constitution (id. at ¶¶ 83-85, Count Nine).

Defendant Dutton now seeks reconsideration of the Court's rulings, arguing plaintiff's claims against him should be dismissed for failure to exhaust administrative remedies, and asks the court to reconsider its ruling with respect to qualified immunity. (Defendant Dutton's Br. at 4-15.)

The CMS Defendants also seek reconsideration, arguing there were insufficient facts in the record for a reasonable juror to find that plaintiff was threatened (CMS Defendants' Br. at 2, 4-5, 13-

2

14); there was insufficient evidence upon which a jury could find that the CMS Defendants had notice of such threats (id. at 2, 6-7); there were insufficient facts to find that they had notice of the perceived threats and, if there was such notice, that CMS staff acted reasonably in referring plaintiff to defendant Dutton to report them (id.); the Court erroneously accepted plaintiff's testimony as fact (id. at 1, 4); the Court erred in denying summary judgment for failure to exhaust administrative remedies[3] (id. at 9-10); the Court erred in holding that the CMS Defendants could have a duty to protect the plaintiff because they are not "prison administrators" (id. at 10); and there was no issue of fact in dispute as to plaintiff's failure to exhaust administrative remedies[4] (id. at 11-12.)  The CMS Defendants argue the Court should consider their argument, which they mistakenly omitted in the prior motion, that plaintiff's tort claims should be dismissed for failure to file a notice of tort claim under the New Jersey Tort Claims Act.  (Id. at 14-15.)

For the reasons that follow, defendant Dutton's motion and the CMS Defendants' motion for reconsideration are **DENIED**; and, to the extent they argue plaintiff failed to exhaust administrative

---

[3]The CMS Defendants argue in this portion of their brief that plaintiff's failure to file an administrative complaint with prison officials before the assault weighs against a finding that the CMS Defendants knew of Samad's supposed threats and that they acted reasonably under the circumstances.  (CMS Defendants' Br. at 9.)  Like the majority of their motion for reconsideration, this argument is directed either at a disagreement with the Court, which is not an appropriate argument under Local Civil Rule 7.1(i), or to the weight of the evidence, which was not at issue in a summary judgment context.

[4]In this portion of their brief, the CMS Defendants argue plaintiff never exhausted administrative remedies after the March 1, 2002 assault.  (CMS Defendants' Br. at 11-13.)  The Court denied the CMS Defendants' motion for summary judgment on this basis because they did not supply the Court with the particular administrative process available to plaintiff.  In this motion, the CMS Defendants have directed the Court's attention to the Prison Inmate Handbook that contains the administrative remedies available to inmates.  (See Certification of Jeffrey S. McClain, Esq., Ex. H.)

remedies, the Court will consider their motions as renewed motions for summary judgment, which shall be **GRANTED** and plaintiff's claims against these defendants shall be **DISMISSED WITH PREJUDICE**. The Court shall further consider the CMS Defendants' Tort Claims Act argument as a renewed motion for summary judgment, which shall be **DENIED**.

## I.   FACTS

The factual background to this case was fully set forth in the Court's Opinion of April 24, 2006, and is incorporated herein by reference. With respect to administrative remedies, the Court noted the following facts:

> Upon admission to the New Jersey State prison system, plaintiff was given an inmate handbook that explains how to submit written grievances, inmate request forms, and other forms. (Baker Dep. at 138:1-141:24.) Mr. Baker stated there was a box available on his unit floor for placement of grievance and request forms. (Id. at 138:1-141:24.) Before the March 1, 2002 assault, plaintiff stated he never filed an inmate request or grievance form with respect to Mr. Samad's threats. (Id. at 142:12-23.) Plaintiff testified he
>> never filed any type of request or grievance until after the incident took place, but I did write statements explaining to my counselors and I did make it clear to Sergeant Dutton what was going on with my situation.
>
> (Id. at 142:23-143:3.)
> Plaintiff stated that, shortly after the incident, he wrote out a statement describing the incident and requesting that charges be pressed against defendant Samad, and he was interviewed by a Mr. Soltyz from "IA." (Id. at 149:11-150:3.) He further stated that he sent request forms to prison administrators Ms. Balincki, Mr. Nunn, and Mrs. MacFarland. (Id. at 147:8-9, 219:19-223:20.) Plaintiff stated that in his request form to Mrs. MacFarland he explained the incident. (Id. at 221:2-3; 221:13-19.) He stated that in his request form to Ms. Balincki, he explained the incident, requested to be out of the NuWay program, and requested the opportunity to go on a work-release program. (Id. at 221:6-12; 222:5-10.) Plaintiff stated these requests went unanswered. (Id. at 222:11-13.) He stated he did not speak

> with anyone else in the DOC, but went through the "proper protocol" by writing these requests. (Id. at 224:24-225:3.)

(April 24, 2006 Opinion at 7-8.) The Court analyzed plaintiff's efforts in light of the summary judgment standard and concluded:

> The movants have not demonstrated that these efforts to employ the grievance process are insufficient as a matter of law. The CMS Defendants have further failed to describe what, if any, grievance procedures were in place that were specific to the NuWay program. Accordingly, the Court has no way to tell whether or not his conversations with NuWay counselors satisfied any such policies. The CMS Defendants' motion to dismiss plaintiff's claims for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a) is, therefore, denied.

(Id. at 17.)

In the instant motion, defendant Dutton addresses this holding by supplementing the record with the administrative protocol for submitting prisoner grievances. In his affidavit, Carlos Villar, an executive assistant at SWSP, describes the grievance procedure set forth SWSP's Inmate Handbook. The Handbook sets up a four-step grievance process involving the completion of four different forms: (1) Inmate Request Form, (2) Interview Request Form, (3) Administrative Remedy Form, and (4) Administrative Remedy Form – Appeal. (Affidavit of Carlos Villar ("Villar Aff."), ¶5, Ex. A at 96.) All of these forms are available from housing unit officers, social workers, and the prison law library and must be submitted via the appropriate drop boxes, which are located on each housing unit. (Id., ¶¶6, 7) Properly submitted forms are routed to the department that can most appropriately respond to the inmate request (id., ¶12) and that department provides a response (id., ¶13). After approval by the Associate Administrator or the Assistant Superintendent, the form is ultimately returned to the inmate

with an administrative response. (Id., ¶14.) If the form is not returned within 30 days, or if the inmate is unsatisfied with the administrative response, he or she must proceed to the next step of the administrative process. (Id.) Forms that do not comply are deemed invalid, returned to the inmate with a notation of the deficiency, and not documented by SWSP. (Id., ¶16-17.)

Mr. Villar also appends plaintiff's Inmate Request Forms dated November 29, 2001, March 4, 2002, March 23, 2002, and May 5, 2002. (Id., ¶18-19, Exh. C.) The November 29, 2001 Inmate Request Form requests a status on plaintiff's request to be reclassified to minimum security status. (Exh. A.) The March 4, 2002 Inmate Request Form describes the March 1, 2002 assault and states "I would like to press street charges on [defendant Samad] for his cowardly act." (Id.) The March 23, 2002 Inmate Request Form also describes the assault and again requests reclassification to minimum security status. (Id.) The May 5, 2002 Inmate Request Form requests a status on plaintiff's pay given that he was discharged from the Nu-Way program in April of 2002. (Id.) None of these forms lodge complaints against any prison official, the CMS defendants, or any other individual except defendant Samad. Moreover, they make no mention of threats made toward the plaintiff, that any prison official was aware of such threats, or that any prison official failed to protect the plaintiff. Mr. Villar further states that a search of SWSP records, which would have revealed properly filed forms (see id., ¶11), revealed that plaintiff did not pursue the remaining steps of the four-step grievance process with respect to any of the Inmate Request forms. (Id., ¶19.)

## II.   DISCUSSION

### A. Standard for Reconsideration

Local Civil Rule 7.1(i) creates a procedure by which a court may reconsider its decision upon a showing that dispositive factual matters or controlling decisions of law were overlooked by the court in reaching its prior decision. See Bryan v. Shah, 351 F. Supp. 2d 295, 297 (D.N.J. 2005); Bowers v. Nat'l Collegiate Athletic Assoc., 130 F. Supp. 2d 610, 612 (D.N.J. 2001). Rule 7.1(i) does not contemplate a recapitulation of arguments considered by the Court before rendering its decision. See Bermingham v. Sony Corp. of Am., Inc., 820 F. Supp. 834, 856 (D.N.J. 1992), aff'd, 37 F.3d 1485 (3d Cir. 1994); Carteret Sav. Bank, F.A. v. Shushan, 721 F. Supp. 705, 709 (D.N.J. 1989). Rather, reconsideration is limited to situations where "dispositive factual matters or controlling decisions of law" were presented to the court but were overlooked. See Resorts Int'l v. Great Bay Hotel and Casino, 830 F. Supp. 826, 831 (D.N.J. 1992); Khair v. Campbell Soup Co., 893 F. Supp. 316, 337 (D.N.J. 1995). Thus, a motion under Rule 7.1(i) may be granted if: (1) "an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or prevent manifest injustice." Database Am., Inc. v. Bellsouth Advert. & Publ'g Corp., 825 F. Supp. 1216, 1220 (D.N.J. 1993); North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir 1995). Because reconsideration is "an extraordinary remedy," it is "to be granted "very sparingly." See NL Indus. Inc. v. Commercial Union Ins. Co., 935 F. Supp. 513, 516 (D.N.J. 1996); Maldonado v. Lucca, 636 F. Supp. 621, 630 (D.N.J. 1986).

As defendant Dutton points out, it is within the Court's discretion to grant a motion for reconsideration "where the record was inadequately developed on a particular issue." Hatco Corp. v. W.R. Grace & Co. Conn., 849 F. Supp. 987, 990 (D.N.J. 1994) (citing New York Guardian

Mortgagee Corp. v. Cleland, 473 F. Supp. 409, 422 (S.D.N.Y. 1979)); see also GE Capital Mortg. Services, Inc. v. Pinnacle Mortg. Inv. Corp., 897 F. Supp. 854, 861 (E.D. Pa. 1995) (citing Hatco Corp. and granting motion for reconsideration based on arguments either not raised or insufficiently developed in the parties' initial motions). Reconsideration does not, however, contemplate a court considering new evidence that was available but not submitted while the underlying motion was pending. DeLong Corp. v. Raymond Int'l, Inc., 622 F.2d 1135, 1140 & n.5 (3d Cir. 1980) (holding District Court did not abuse its discretion in refusing to consider, in the context of a reconsideration motion, evidence that was readily available but not submitted in the underlying motion). Accordingly, relief under Local Civil Rule 7.1(i) is not available where the evidence provided in support of such a motion was available but was not submitted in connection with the previous motion.

  The majority of the CMS Defendants' motion is a recapitulation of arguments that were advanced and rejected by the Court in connection with the underlying motion. Defendant Dutton's argument that the Court erroneously held that he was not qualifiedly immune also does not appear to present any new law or facts that the Court overlooked. The Court considered all of the facts of record in that motion and the mere disagreements with its conclusions, as set forth in the defendants' motions, are not a proper basis for relief under Local Civil Rule 7.1(i). See Florham Park Chevron, Inc. v. Chevron U.S.A., Inc., 680 F. Supp. 159, 162 (D.N.J. 1988) (holding mere disagreement with a decision "should be dealt with in the normal appellate process, not on a motion for reargument under [the] Local Rule . . . ."). Moreover, the CMS Defendants appear to argue, as a general matter, that the Court should find plaintiff's deposition testimony regarding the perceived threats and his reporting them to CMS staff insufficient to create an issue of material fact. This argument ignores the Court's

obligation, in a summary judgment context, to deny summary judgment where the non-moving party opposes the movants' affidavits with record evidence, including "depositions, answers to interrogatories, or further affidavits," that creates a factual conflict regarding a material issue. See Fed. R. Civ. P. 56(e). Rule 7.1(i) does not give the movants a venue to challenge the Court's rulings in this regard and, therefore, their motions for reconsideration shall be denied.

With respect to the exhaustion of administrative remedies argument, the Court also finds that reconsideration is not the proper mechanism for redress. Indeed, no party has argued that the evidence now submitted was unavailable during briefing on the underlying motion. Rather than invite another summary judgment motion, however, the Court will treat the portion of the reconsideration motion that deals with exhaustion as a renewed motion for summary judgment on that issue.

### B.     Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment may be granted if the materials submitted to the Court show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Hersh v. Allen Prods. Co., 789 F.2d 230, 232 (3d Cir. 1986); Lang v. New York Life Ins. Co., 721 F.2d 118, 119 (3d Cir. 1983). Where the facts are not in dispute and the issues contested in a summary judgment motion are legal issues, the Court may decide the legal issues and rule accordingly on the summary judgment motion. See Ingram v. County of Bucks, 144 F.3d 265, 267 (3d Cir. 1998) (when there is no genuine issue of material fact in dispute and the issue facing the court is a question of law, it can properly be resolved on summary judgment). The existence of a "mere scintilla of evidence in support of [a] nonmovant's position will be insufficient" to withstand a summary judgment motion. Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  In determining whether more than a scintilla is extant, a court must "not weigh the evidence or make credibility determinations; these tasks are left to the fact-finder."  Boyle v. County of Allegheny Pa., 139 F.3d 386, 393 (3d Cir. 1998).

    **C.**    **Administrative Remedies**

In its April 24, 2006 Opinion, the Court noted the standard for exhaustion of administrative remedies as follows:

> The [Prisoner Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997e(a)] PLRA provides in relevant part:
>> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.
>
> 42 U.S.C. § 1997e(a).  The Supreme Court has stated "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).  Citing Porter, the Court of Appeals for the Third Circuit has interpreted the language "with respect to prison conditions" broadly to include any action arising from "the effects of actions by government officials on the lives of persons confined in prison."  Booth v. Churner, 206 F.3d 289, 294-95 (3d Cir. 2000) (holding a prisoner's excessive force claims related to a "prison condition" and were dismissed under Section 1997e(a) for failure to exhaust administrative remedies).  In Booth, the court read Section 1997e(a) to require exhaustion of administrative remedies in:
>> civil actions ranging from excessive force actions, . . . to actions "with respect to" a prison official's decision not to make basic repairs in the prison, or intentionally to deny a prisoner food, heating, or medical attention.  All of these actions affect the lives of prisoners similarly: They make their lives worse.
>
> 206 F.3d at 295.  Because plaintiff's claims about defendants' failure to protect him from another prisoner and failure to supply adequate medical treatment "concern everyday aspects of an inmate's life in

10

> prison," they involve "prison conditions" within the meaning of PLRA and are subject to the exhaustion requirement. See Dawud v. Talasnik, No. Civ. 04-1015, 2005 WL 1881026, at *6 (D.N.J. Aug. 4, 2005) (holding "[c]omplaints that corrections officers failed to protect an inmate from another prisoner involve 'prison conditions' within the meaning of PLRA because they "concern everyday aspects of an inmate's life in prison."). Therefore, the Court rejects plaintiff's argument that his claims do not relate to "prison conditions" under the PLRA.
>
> The Court further finds that the PLRA applies with respect to plaintiff's Section 1983 claims against CMS. The language "[n]o action shall be brought . . . under section 1983 of this title . . . until such administrative remedies as are available are exhausted" cannot reasonably be read to except private correctional medical services providers. Indeed, even private entities like CMS are considered state actors under Section 1983. See West v. Atkins, 487 U.S. 42, 54 (1988) (holding a physician is considered a state actor when the physician is under contract to provide medical services to prisoners); Christy v. Robinson, 216 F. Supp. 2d 398, 412 n.26 (D.N.J. 2002) (citing West and finding CMS to have been a state actor for the purpose of the plaintiff prisoner's Eighth Amendment claim); Ford v. Prison Health Servs., Civ. A. No. 90-7253, 1991 WL 137022, at *1 (E.D. Pa. July 17, 1991) (holding that a physician is considered a state actor when the physician worked for Prison Health Services, a company under contract with the state to provide medical services to prisoners). In particular, Courts within this Circuit have recognized that the exhaustion requirement applies to Section 1983 claims against CMS. See, e.g., Frink v. Williams, No. CIV.A.04-026, 2005 WL 2346891, at *2 (D. Del. Sept. 26, 2005) (dismissing prisoner's claim that CMS failed to provide him adequate medical care for failure to exhaust administrative remedies); Christy, 216 F. Supp. 2d at 412 n.26; Baker v. Williams, No. CIV.A.01-471, 2002 WL 31015630, *3 (D. Del. Sep. 10, 2002) (applying Section 1997e(a) analysis to prisoner's claims against CMS). In this case, plaintiff claims the CMS Defendant administered the NuWay program that created a condition of prison life that caused plaintiff harm. Accordingly, the Court is satisfied that Section 1997e(a) applies to CMS.

(April 24, 2006 Opinion at 14-16.) The Court recounted the forms that plaintiff submitted to prison officials regarding the March 1, 2002 assault, and concluded that:

11

> [t]he movants have not demonstrated that these efforts to employ the grievance process are insufficient as a matter of law. The CMS Defendants have further failed to describe what, if any, grievance procedures were in place that were specific to the NuWay program. Accordingly, the Court has no way to tell whether or not his conversations with NuWay counselors satisfied any such policies. The CMS Defendants' motion to dismiss plaintiff's claims for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a) is, therefore, denied.

(April 24, 2006 Opinion at 16-17.)

Defendant Dutton's new motion, however, sheds some light of the administrative process and the forms required of prisoners to proceed with claims regarding prison life pursuant to the SWSP Inmate Handbook. The Court of Appeals for the Third Circuit has held that the PLRA's exhaustion requirement applies to grievance procedures set forth in an inmate handbook, even if that handbook is not formally adopted by a state administrative agency. See Concepcion v. Morton, 306 F.3d 1347, 1355 (3d Cir. 2002) (holding, "the plaintiffs must first attempt to address their grievances through the administrative remedy described in New Jersey's Department of Corrections Inmate Handbook before they will be allowed to pursue their § 1983 claims."); Dawud, 2005 WL 1881026, at *7. Here, there is no question that the PLRA applies to the SWSP Inmate Handbook, which was adopted in accordance with N.J.A.C. 10A:8-1:1 through 10A:8-3.6.

A review of plaintiff's Inmate Request Forms shows he never lodged administrative complaints similar those that are being pursued in this litigation. As the defendants point out, none of the forms mention any prison official, the CMS defendants, or any other individual except defendant Samad. They make no mention of Samad's alleged threats, that any prison official was aware of such threats, or that any prison official failed to protect the plaintiff. Rather, his forms deal with security reclassification,

wage issues, and the desire to file charges against defendant Samad. Nor did he previously request the money damages he now seeks. Further, it is undisputed that plaintiff never pursued the remaining steps of the four-step grievance process with respect to any of his Inmate Request Forms. Even if these forms adequately set forth the complaints for which he now seeks recovery, therefore, they did not exhaust the process set forth in the Inmate Handbook. While the Court notes that "compliance with the administrative remedy scheme will be satisfactory if it is substantial," Nyhuis v. Reno, 204 F.3d 65, 77-78 (3d Cir. 2000), plaintiff's efforts in this case do not constitute substantial compliance with the four-step administrative process. For these reasons, plaintiff has failed to exhaust administrative remedies and his federal claims shall be dismissed as to defendant Dutton and the CMS Defendants. Because the statute of limitations on his claims against these defendants has lapsed, plaintiff cannot cure this deficiency, and his federal claims shall be dismissed with prejudice.

      **D.**    **Application of New Jersey Tort Claims Act to the CMS Defendants**

The CMS Defendants further raise the new argument that plaintiff's state law claims against them are barred under the New Jersey Tort Claims Act because he failed to file a notice of tort claim. (CMS Defendants' Br. at 14-15.) While improperly raised in a motion for reconsideration, the Court will treat this as a renewed motion for summary judgment for the sake of judicial economy. For the reasons that follow, the motion is denied.

The CMS Defendants cite no legal authority in support of their Tort Claims Act argument. The only authority bearing on the issue, which was not cited to the Court, involves a recent ruling by Judge Bassler in Jackson v. Fauver, Civ. A. No. 98-2890, 2005 WL 1677513, at *6 (D.N.J. June 29,

2005).[5] In Jackson, the District Court held that the State could be held vicariously liable for the conduct of an independent contractor, such as CMS. Jackson v. Fauver, 334 F. Supp. 2d 697, 744 (D.N.J. 2004) (citing Scott-Neal v. N.J. State Dept. of Corrs., 366 N.J. Super. 570 (App. Div. 2004) and holding ). On motion for reconsideration, CMS argued, inter alia, that holding court's holding contravened the New Jersey Tort Claims Act. Jackson, 2005 WL 1677513, at *5. The court rejected CMS's argument, reasoning "the New Jersey Tort Claims Act does not apply where, as here, the defendant is not a public entity; in any event, CMS failed to raise this argument in previous submissions to the Court." Id. at *5. The Court ultimately refused to entertain CMS's Tort Claims Act argument, holding:

> The CMS Defendants now ask the Court to grant summary judgment with respect to all Plaintiffs' pendant state law claims because Plaintiffs allegedly failed to file a Tort Claim Notice pursuant to N.J.S.A. 59:8-1 et seq. The CMS Defendants have raised this argument for the first time on this motion for reconsideration. The Court refuses to consider this argument now, when the CMS Defendants could have raised it in their motion for summary judgment.

Id. at *7. Thus, the only available authority on the issue suggests that New Jersey Tort Claims Act does not operate to bar state law claims against CMS because it is not a public entity. Given this authority, and in the absence of any legal authority for granting summary judgment in the CMS Defendants' favor, the Court shall deny their summary judgment motion on this argument.

**III.    CONCLUSION**

For all of the foregoing reasons, summary judgment shall be entered in favor of defendant

---

[5]CMS's counsel in Jackson also represents CMS in the instant matter.

Dutton, the CMS Defendants as to all claims against them.  An appropriate order will follow.

Date:   July 28, 2006

/s/Stanley R. Chesler  
United States District Judge